GEORGE KING v. ALVAH WATERMAN.

FILED JUNE 9, 1898. No. 8147.

1. **Breach of Executory Contract: TIME ACTION ACCRUES.** An action for a breach of executory contract cannot be maintained upon a mere declaration by the other party, before performance is due, that he does not intend to comply with the terms of his agreement.

2. ———: EVIDENCE. Where an executory written contract for the conveyance of real estate requires the payment of a specified amount of the consideration in cash at the date of such contract, and by virtue of an independent agreement between the parties a demand promissory note of the vendee is accepted as for and in lieu of the cash payment, the refusal of the vendor and the payee to accept the sum due on said note will not constitute a breach of the terms of said executory contract.

ERROR from the district court of Douglas county. Tried below before HOPEWELL, J. *Affirmed.*

*Brome, Burnett & Jones* and *Martin Langdon,* for plaintiff in error.

*C. J. Smyth* and *T. J. Mahoney, contra.*

NORVAL, J.

On June 13, 1893, Alvah Waterman entered into a written agreement with George King for the sale to the latter of 240 acres of land situate in Douglas county. The following is a copy of said contract:

"Articles of agreement, made and entered into this 13th day of June, 1893, by and between Alvah Waterman, of Elkhorn precinct, of Douglas county, Nebraska, of the first part, and George King, of Wisner, Nebraska, of the second part, witness:

"Alvah Waterman, of the first part, does hereby contract and agree with George King, of the second part, to sell to him the land described as follows:

"The southeast quarter (SE. $\frac{1}{4}$) of section No. twelve (12), in township No. sixteen (16), range No. ten (10) east. Also the west one-half ($\frac{1}{2}$) of the northwest quarter (NW. $\frac{1}{4}$) of section No. thirteen (13), township No. sixteen (16), range No. ten (10) east, being in all two hundred and forty (240) acres of land, at the price of fifty-five ($55) dollars per acre, making the total price thirteen thousand two hundred (13,200) dollars, to be paid as follows:

"One thousand (1,000) dollars on this 13th day of June, 1893, the receipt whereof is hereby acknowledged, and eight thousand ($8,000) dollars on or before Feb'y 1st, 1894, and the remaining forty-two hundred dollars ($4200) to be secured by mortgage on said land.

"Alvah Waterman does hereby agree and bind himself and his heirs and assigns to make and execute unto George King a warranty deed, as soon as the said pay-

ment of Feb'y 1st, 1894, of eight thousand ($8,000) dollars is made, to said land, taking a mortgage for balance unpaid, the ownership and title to remain in Alvah Waterman until the above described payments are made and mortgage given.

"George King, party of the second part, does hereby agree to the above writings: he agrees to pay Alvah Waterman, his heirs or assigns, the price of fifty-five ($55) dollars per acre for the land heretofore described of two hundred and forty acres, making a total price of thirteen thousand two hundred ($13,200) dollars, and agrees to pay one thousand ($1,000) cash, eight thousand ($8,000) dollars on or before the first day of February, 1894, and further agrees to give to Alvah Waterman a mortgage upon all said land for the remaining unpaid principal, when deed shall be delivered to him. The remaining unpaid principal to be paid as follows: Two thousand ($2,000) dollars payable in three years from date given, and bearing interest at the rate of seven (7) per cent, payable annually, and secured by mortgage on said land; twenty-two hundred (2200) dollars payable in five years from date given, and bearing interest at the rate of seven (7) per cent, payable annually, and secured by mortgage on said land hereto before described.

"To all of the above writing we, and each one of us, hereby and hereto agree, and set our hands, this 13th day of June, 1893.

"Witness:            ALVAH WATERMAN.

"J. M. BRUNER.          GEORGE KING."

On December 12, 1893, King instituted this action to recover from Waterman damages for the alleged breach by the latter of the conditions of said contract. The making of this agreement is admitted by the answer, but the defendant in his pleading denied that the stipulations of said contract had been broken by him. The jury, under an imperative instruction by the trial judge, returned a verdict for the defendant, and the unsuccessful party has prosecuted error from the judgment entered thereon.

King v. Waterman.

The question presented is whether there had been any breach of contract by Waterman at the time the suit was brought in the court below. It will be observed that by the stipulations of the parties, set out in the agreement under consideration, the defendant was not required to convey before plaintiff had made to Waterman a certain payment of $8,000, and given him a mortgage on the land sold for $4,200, the balance of the unpaid purchase-money, which payment was required to be made and mortgage executed on or before February 1, 1894. This suit was commenced in December, 1893, nearly two months before the final limit of time designated by the parties for the performance of the contract, without plaintiff having paid or tendered to the defendant the said sum of $8,000, or executed the mortgage aforesaid, so that the suit was prematurely instituted, unless a right of action had then accrued by reason of the matters hereafter to be stated.

The contract provided that the first payment to be made thereon by King should be $1,000 in cash. It is undisputed that of this amount only $300 was paid in money at the time the agreement was signed, and that Waterman accepted, in lieu of the balance of said $1,000, the demand note of plaintiff for $700, which defendant left with Mr. Bruner, a banker at Elkhorn, for collection. While a portion of the lands agreed to be conveyed was occupied by Waterman and his wife as their homestead, yet the agreement was signed by the husband alone. Mrs. Waterman informed King on July 15, two days after the date of the contract, that she would not execute a deed to the premises, and subsequently on the same day the defendant stated to plaintiff that the neighbors had been talking to his wife and induced her to refuse to sign the deed, and by reason of the premises he, Waterman, expressed his inability to carry out the contract. King informed the latter that if he broke the contract he would insist upon the payment of the damages sustained by reason of such failure

of defendant to perform. Later, during the same day, King tendered to Mr. Bruner the amount of the $700 note, which the latter held for collection. Bruner, under ,instructions from defendant, declined to receive the money, and shortly thereafter Waterman offered to return said note and $300 in money to King, which he refused to accept. Several subsequent conversations were had between plaintiff and defendant relative to the sale of the land, during which Waterman informed King, in effect, that he was willing to comply with his stipulations in the contract, but as Mrs. Waterman had refused to join him in the conveyance, a good title could not be given. On October 3, 1893, the defendant notified the plaintiff that his note for $700 was at the bank in Elkhorn awaiting payment, and that Waterman was ready to carry out the provisions of the contract of June 13. King refused to pay the note or comply with his stipulations in said agreement. On February 1, 1894, the defendant tendered to plaintiff a deed of general warranty to the premises, executed by Waterman and his wife, which was deposited with the clerk of the district court, to be by him delivered to plaintiff upon his complying with the terms and conditions of the contract by him to be kept and performed.

We are fully persuaded that the facts in the case at bar bring it within the principle announced in *Carstens v. McDonald*, 38 Neb. 858, where it was stated: "A mere declaration by a party to a contract that he does not intend to carry out the terms thereof before performance is due will not constitute a breach, so as to authorize the other to at once maintain an action; for the party, at any time before the period fixed for performance, has the right to recant and comply with his agreement; but if he fails to withdraw his declaration before the time comes for performance, it will excuse the default of the other party." (See *Terry v. Beatrice Starch Co.*, 43 Neb. 866.) The doctrine stated is sustained by the decisions from other courts, and the correctness of the rule, as an ab-

King v. Waterman.

stract proposition of law, is conceded by counsel for plaintiff; but he argues that it is not applicable to the case in hand, since the proofs disclose that there was an unqualified refusal by the defendant to comply with the contract. As we read and construe the evidence contained in the bill of exceptions, there was no absolute and unqualified declaration on the part of Waterman that he would not perform the contract according to its terms and at the stipulated time for performance. All that can be claimed from the proofs is that the defendant merely expressed a doubt of his ability to carry out his agreement on account of the refusal of his wife to execute the deed; that subsequently, and before the time for performance had arrived, plaintiff was advised by Waterman that he and his wife would make the conveyance of the lands as agreed. The deed was duly executed and tendered at the period fixed by the parties for performance. There had been no breach of the contract by Waterman at the time this action was commenced.

It is urged that the failure to receive the payment of the $700 note constituted a breach of the contract. We do not so consider it. This note was no part of the agreement for the sale of the land, but was accepted merely in lieu of that amount of cash, and having been so received the stipulation for the first payment of $1,000 was fully satisfied. Suppose plaintiff had failed to pay the note, but had complied with every provision in his contract to be performed by him, would the failure to pay the note have prevented him from enforcing specifically the contract against the defendant? To state the proposition is to evoke a negative answer. This shows that the declination at one time to accept the money on the note did not constitute a breach of the contract of sale. The judgment is

AFFIRMED.